Edward LEIBOWITZ, et al., Plaintiffs,

v.

Daniel E. CONWAY, et al., as Trustees of the Bakery and Confectionery Union and Industry International Pension Fund, Defendants.

Civ. A. No. 77–453–MC.

United States District Court, D. Massachusetts.

Nov. 30, 1981.

Dina Lassow, Boston, Mass., for Harry Leibowitz.

Jeffrey Petrucelly, Petrucelly & Stolzberg, Boston, Mass., for Edward Leibowitz.

James Skelly Wright, Harry W. Burton, Morgan, Lewis & Bockius, Washington, D.C., John J. Delaney, Jr., Nutter, McClennen & Fish, Boston, Mass., for Conway et al.

Arthur J. Flamm, Flamm, Mason, Paven & Feinberg, Boston, Mass., for Fearer et al.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McNAUGHT, District Judge.

Plaintiffs filed this action in 1977 seeking review of the decisions of the defendant Trustees of the Bakery and Confectionery Union and Industry International Pension Fund (International Fund) denying their applications for pensions.[1]

The case was tried without a jury and the parties submitted memoranda and proposed findings of fact and conclusions of law. After due consideration of the evidence and the materials submitted by both parties, the court makes the findings of fact and conclusions of law which follow in this memorandum.

## I. FINDINGS OF FACT.

### (A) PLAINTIFFS' EMPLOYMENT HISTORY

From about 1934 to 1963 the plaintiffs Harry[2] and Edward Leibowitz worked in the Leibowitz Bakery, which was owned by their parents, Louis and Celia Leibowitz, from the early 1900's until their deaths, in the late 1940's and early 1950's. Eli and David Leibowitz, brothers of the plaintiffs, also worked in the family bakery during that time.

In the mid-1930's, Eli Leibowitz became the supervisor in the family bakery. As such, Eli would determine how much bread was to be made, how much supplies were to be ordered, and how much was to be charged for the baked goods. When Louis and Celia Leibowitz died, Eli took charge of the running of the family business; he did all of the ordering and buying, he set the prices, he directed the work of the plaintiffs, and he signed collective bargaining agreements on behalf of the bakery.

From the beginning of their employment in the family bakery to the time of its dissolution in 1963, the plaintiffs performed the work of doughman and/or baker at the Leibowitz Bakery.

The Leibowitz Bakery became incorporated in 1953. Each of the Leibowitz brothers was listed as an officer, director, and shareholder of the Leibowitz Bakery, Inc. from 1953 to 1963. (Stipulated to at trial.) Edward was the Clerk and Harry was the Vice President of the corporation.

From approximately 1948 to 1963, payments were made by the Leibowitz Bakery on behalf of the plaintiffs to the Jacob Goldstone Fund for health and welfare and pension benefits, pursuant to collective bargaining agreements between the Leibowitz Bakery and Bakers Union Local No. 45. From 1963 to June, 1970 contributions were made on behalf of the plaintiffs to the Local Fund by employers other than the Leibowitz Bakery.

From June, 1970, Harry Leibowitz was employed at the Claret Baking Company and other bakeries until his retirement in June, 1973, and contributions were made on his behalf to the International Fund pursuant to collective bargaining agreements. From June, 1970, Edward Leibowitz was employed at Green and Freedman Baking Company until his retirement in March, 1975, and contributions were made on his behalf to the International Fund pursuant to collective bargaining agreements.

Harry Leibowitz was a member of Bakers Union Local No. 45 from 1934 to June, 1973; Edward was a member of that union from 1934 to March, 1975. Upon their retirements plaintiffs applied for pension benefits from the International Fund. Those applications were denied because the International Fund determined that plaintiffs were self-employed at the Leibowitz Bakery and had not earned sufficient service credit to qualify for pensions.

---

1. Originally, plaintiffs also brought this action against the Trustees of the Bakers Union Local No. 45 of Boston and Subscribing Employers Pension Fund. In an order of December 16, 1980, this court dismissed the action as it applied to the Trustees of the Local Fund, finding that the plaintiffs had not stated a claim under 29 U.S.C. § 185(a) and that whatever cause of action plaintiffs may have had was barred by the statute of limitations.

2. Plaintiff Harry Leibowitz is now deceased. His daughter, Laina Levine, executrix of his estate, has been substituted as plaintiff in this action.

### (B) THE LOCAL AND INTERNATIONAL FUNDS

The International Fund is a jointly trusteed, multi-employer pension trust established pursuant to 29 U.S.C. § 186(c)(5). During the spring of 1970, Local 45 and a group of employers in the baking industry signed a collective bargaining agreement which obliged the employers to make contributions to the International Fund on behalf of the bakers covered by the collective bargaining agreement. Harry and Edward Leibowitz were employed by Claret Bakery and Green-Freedman Bakery, respectively, which bakeries were accepted into the International Fund as of June 1, 1970.

The International Fund did not know the identities nor the number of employees at Claret or Green-Freedman Bakeries who were to be covered by the International Fund.

The decision by the Local Fund to discontinue participation of active employees was made on May 12, 1970. That decision was contingent upon the International Fund's acceptance into the Fund of the collective bargaining parties. One major reason for the decision of the Local Fund was that cost escalation and asset depletion were placing the Local Fund in danger of insolvency.

At a meeting of Local 45 sometime in April or May of 1970, George Newman, the Business Manager of Local 45, discussed the precarious financial position of the Local Fund and explained the need for participation in the International Fund. He also explained the advantages and disadvantages of joining the International Fund and discussed the eligibility requirements, specifically those regarding the eligibility of owners or corporate officers of bakeries. Harry and Edward Leibowitz were present at that meeting where no objections to joining the International Fund were raised by the membership.

(In reaching the findings of fact set forth in the preceding paragraph, I have had to make a difficult choice: whether to accept the testimony of George Newman or that of Edward Leibowitz. After careful deliberation, I have decided that Mr. Newman testified truthfully concerning the meeting of the membership of Local 45 in May of 1970.)

There was no relationship prior to June 1, 1970 between Local 45 and the International Fund. The only relationship thereafter was that Local 45 was a party to collective bargaining agreements calling for contributions to the International Fund.

There was no relationship between the Local Fund and the International Fund; the two did not merge in 1970, but remained separate entities. Nor was there any agreement between the Funds to transfer any liabilities or assets between them.

The International Fund provided copies of its rules and regulations to George Newman prior to his meeting with the Local 45 membership in April or May of 1970. According to John J. Fleming, the Administrative Director of the International Fund, (whose testimony I find credible), the Fund, in keeping with its regular practice, also provided copies of its rules and regulations to the plaintiffs' employers soon after they joined the International Fund. The plaintiffs at no time requested a copy of the Fund rules and and regulations.

### (C) THE DENIALS OF PENSIONS

Harry applied for his pension by an application dated May 25, 1973; Edward applied for his pension on May 1, 1975. In investigating the applications, the Fund obtained quarterly reports of Social Security contributions made by the plaintiffs. The Fund noted that no contributions were made by either plaintiff or by the Leibowitz Bakery from 1939 to 1952. Through experience in working with such records, the Fund determined that neither Harry nor Edward nor the Leibowitz Bakery viewed the plaintiffs as employees during that period. Additional evidence of non-employee status was the fact that the applicants' and the Bakery names were identical. Additionally, Harry Leibowitz's daughter informed the Fund by phone that her father was a partner in the Leibowitz Bakery from at least 1937 until 1963.

The Fund initially denied pensions to both plaintiffs because they had not accumulated the required fifteen years of combined credited service. The plaintiffs were granted "future service credit" for the time they worked at contributing bakeries after joining the International Fund. They were also granted "past service credit" for the time they worked at contributing bakeries from the time of the dissolution of the Leibowitz Bakery to their acceptance into the International Fund. The Fund granted no past service credit for the claimed work at Leibowitz Bakery since it had determined that plaintiffs were self-employed. As a result, Harry was credited with 9 years, 6 months combined service (which Fleming admits should have been 9 years, 9 months) and Edward was credited with 11 years, 11 months combined service. Plaintiffs appealed the decisions but the Board of Trustees affirmed the denials in 1976.

### (D) PLAN RULES AND REGULATIONS

The applicable rules and regulations are published in the Bakery and Confectionery Union and Industry International Pension Fund Rules and Regulations (Ex. 2 and 4). The Fund also has published a brief general outline of pension benefits entitled "Summary of Rules and Regulations" (Ex. 3). Among the relevant provisions of the Rules and Regulations are the following:

(1) Article I, Section 7—*Covered Employee.*

The term "Covered Employee" shall mean a person covered by a collective bargaining agreement between a Contributing Employer and a Local Union, which agreement requires periodic contributions to the International Pension Fund to provide Plan A Pensions and may also require contributions to the Fund to provide Plan B and/or Plan C Pensions and/or Plan D Supplemental Pensions, as those terms are defined in Article IV. A Covered Employee who earns Credited Service remains such after leaving Covered Employment, until such time as a break in employment occurs under Article III, Section 5(b).

The term "Covered Employee" shall not include any self-employed person or a person who is an employer or an officer of a corporation, or a partner or owner of a company or business organization which is a Contributing Employer or Employer, as such terms are defined in Sections 5 and 6 of this Article. (Ex. 2, p. 2).

(2) Articles III and IV.

Article III defines how *covered employees* can accumulate credit toward pension *eligibility.* Article IV sets forth the various types of pensions available to *covered employees* and the standards of eligibility for those pensions. Both of those articles apply to *covered employees.* Since I conclude that the plaintiffs were not *covered employees* (See discussion, *infra*), I will not repeat those relevant yet inapplicable articles here.

(3) Article V, Section 4—*Action by Trustees.*

The Trustees shall be the sole judges of:

(a) the standard of proof required in any case;

(b) the application and interpretation of these Rules and Regulations;

(c) crediting of Past or Future Service credits;

and the Trustees' decisions with respect to the foregoing shall be final and binding on all persons. Wherever in the Plan the Trustees are given discretionary powers, the Trustees will exercise such powers in a uniform and non-discriminatory manner. (Ex. 2, p. 38).

## II. CONCLUSIONS OF LAW.

Plaintiffs have argued that the International Fund committed errors of law and violated its fiduciary duties to them by failing to inform them of its eligibility requirements and by acting arbitrarily and capriciously in denying pension benefits to them. For the reasons which follow, I find that the plaintiffs have failed to prove their allegations by a preponderance of the evidence.

## (A) BREACH OF DUTY TO INFORM

Plaintiffs argue that the International Fund had a duty to inform them of its eligibility rules for receipt of pension benefits.

■ There was no fiduciary duty owed to the plaintiffs by the International Fund prior to June of 1970. Up to that time plaintiffs had contributed to and been members of the Local Fund. There was no relationship between the Local and the International Funds either before or after June of 1970; nor was there any relationship between the plaintiffs and the International Fund prior to the Fund's acceptance of plaintiffs as participants in June, 1970. As previously determined (See discussion, Part I (B) *supra*), the International Fund did not know the identities nor the numbers of employees who were to be accepted into the plan prior to their acceptance. Absent some relationship—contractual or otherwise—between the International Fund and the plaintiffs, Local 45, or the Local Fund, there can be no fiduciary duty owed by the defendant prior to June, 1970.

Since I have determined that George Newman, the Business Manager of Local 45, did inform the membership of the eligibility requirements of the International Fund (See Part I (B) *supra*), plaintiffs' contention that Newman's failure to provide notice of the Fund's requirements somehow bound the Fund must fail.

It is unclear from the testimony at trial whether or not the plaintiffs' employers in 1970, namely Claret Bakery and Green-Freedman Bakery, received copies of the regulations of the International Fund. While I find Mr. Fleming's testimony credible when he says the Fund would have sent such information to participating bakeries, the failure of the Fund to do so would not alter my decision. The plaintiffs could not have been misled or prejudiced by the Fund's alleged failure to provide the eligibility rules to them since they had been informed of those rules in May of 1970 by George Newman.

## (B) ARBITRARY AND CAPRICIOUS ACTION

■ The scope of inquiry in judging the actions of the defendants in administering the pension plan "is limited to determining whether the actions were arbitrary and capricious in light of the trustees' responsibility to all potential beneficiaries". *Palino v. Casey*, 664 F.2d 854, 858 (1st Cir. 1981); *Rueda v. Seafarers International Union*, 576 F.2d 939 (1st Cir. 1978).

■ The decisions were based primarily on the defendants' review of the evidence which was provided by the plaintiffs and records obtained from the Social Security Administration. In addition, defendants had information from the daughter of Harry Leibowitz that her father was a partner in the Leibowitz Bakery from 1937 to 1963 (Ex. 6P). In considering Harry Leibowitz's appeal, the International Fund also considered letters received from Harry Leibowitz and from George Newman saying that Harry was not considered an employer in the Leibowitz Bakery, that he exercised no managerial functions there, and that he was unaware that he was listed as an officer of the corporation (Ex. 6E and 6F).

The defendants relied chiefly on the Social Security Administration reports of the contributions of the plaintiffs. Finding no reported contributions by either Harry or Edward Leibowitz or by the Leibowitz Bakery from 1939 to 1952, the Fund determined that the plaintiffs were other than "covered employees" during that period. The common name of the plaintiffs and the bakery confirmed that determination. The information provided by Harry Leibowitz's daughter bolstered that conclusion.

Plaintiffs were given an opportunity to appeal and they did so. They provided no additional evidence to refute the determination made by the Fund, nor could they have done so since the evidence produced at trial showed that plaintiffs were indeed shareholders and corporate officers from 1954 to 1963.

Despite that fact, plaintiffs argue that the decision and the process by which it was

reached were arbitrary and capricious. While I adopt the standard used by Judge Keeton in *Toland v. McCarthy*, 499 F.Supp. 1183, 1193 (D.Mass.1980) that "whatever the procedures may be, and however formal or informal, they must satisfy basic principles of fair procedure for determining the adjudicative facts on the basis of which a claim is allowed or denied," I reach a different conclusion.

The International Fund had before it a substantial amount of evidence indicating that plaintiffs did not have the status of "covered employees" at the Leibowitz Bakery. While additional evidence, such as corporate records, might have been pursued by the Fund, such evidence would simply have confirmed the Fund's conclusion. The plaintiffs had the opportunity to refute that conclusion on appeal but did not, and could not, provide evidence to the Fund which did so.

In conclusion, I find that the decision of the International Fund denying pension benefits to the plaintiffs was reasonable, consistent with the published regulations of the Fund, and supported by substantial evidence. I conclude, therefore, that since plaintiffs have not demonstrated that the decision of the defendants was arbitrary or capricious, judgment must be for the defendants.